# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LORD SHAMEAL ALLAH, #168159, | ) ) ) |
| Plaintiff, | ) Civil Action No. 0:06-3390-MBS-BM ) |
| v. | ) ) |
| COLIE L. RUSHTON, JAMES S. PARKER, AND WILLIAM MILLER, | ) **REPORT AND RECOMMENDATION** ) ) |
| Defendants. | ) ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges that he is being subjected to cruel and unusual punishment as well as violation of due process because he is being improperly held in detention. The named Defendants are all employees of the South Carolina Department of Corrections.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 11, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 13, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that

1



if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response to the motion for summary judgment on July 26, 2007, following which Defendants filed a reply memorandum on August 9, 2007. Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Complaint[2] that on or about October 25, 2004 he was placed in lock-up under investigation and transferred to "Lee County Prison". Plaintiff alleges that on or about June 15, 2005, he was "released off" investigation status and transferred to the Perry Correctional Institution (PCI) the following day. However, Plaintiff alleges that he was subsequently transferred to the "lock-up" at the McCormick Correctional Institution (MCI) in August 2005, and that after completing his time in disciplinary detention he was placed back in security detention.

Plaintiff alleges that he has since been "disciplinary free" and has successfully progressed through the Department's special management program. Plaintiff alleges that on June 4, 2006, he wrote to the Defendant Miller, a classification officer, and was told that as of June 3, 2006 he would have been disciplinary free for one year, and that on his thirty (30) day review (which

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



would be held sometime between June 19 and June 23) he would be considered for release "back to the yard". See also, Attachment A to the Plaintiff's Complaint. Plaintiff alleges that he has not been released, however, even though the Defendant Parker (another classification officer) informed him that he had been approved for release from lock-up and placed on the bed space list. Plaintiff alleges that he has been told by "Lt. Gilchrist and Capt. Bush" that, due to his previous record, they could not find an institution to accept him. Plaintiff alleges that he thereafter wrote the Defendant Miller, who had told Plaintiff three (3) months earlier that he was waiting for bed space, but that Miller now responded that even though Plaintiff was "on the list to be transferred pending bed space", they had over three (300) inmates more than the Department could hold. See also Exhibit B to Plaintiff's Complaint.

      Plaintiff alleges that he has never received a proper hearing for his continued detention (due process violation), and that his failure to be transferred back to "the yard" is due to the prison being unconstitutionally overcrowded (cruel and unusual punishment violation). Plaintiff seeks monetary damages, as well as injunctive relief. See generally, Verified Complaint.

      In support of summary judgment in the case, the Defendant Parker has submitted an affidavit wherein he attests that he is currently the Associate Warden at the McCormick Correctional Institution, but that prior to November 17, 2006 he was head of classification at MCI. Parker attests that the Special Management Unit (SMU) is the most secure area of the prison, designed to hold inmates who present a higher security risk at a higher security level. Parker attests that inmates are generally placed in the SMU for violent or disruptive behavior or for excessive disciplinary violations, but that the SMU also holds inmates who are on protective custody or short term lock-up. Inmates on protective custody are in the SMU to protect them from potential harm from other



inmates, while inmates on short term lock-up are inmates who have been charged with a disciplinary offense and are awaiting a hearing on the disciplinary charge. Inmates on disciplinary detention are inmates who have been charged with a disciplinary offense and found guilty of that charge, and have been placed in the SMU for a specified amount of time as a result of the disciplinary conviction. Finally, Parker attests that the SMU also holds inmates on security detention. These are inmates who have been convicted of a serious disciplinary infraction and are placed in the SMU for an indefinite amount of time as they are considered to be a threat to the safety and security of the institution, staff or other inmates. Inmates on security detention may or may not have served their time for disciplinary detention.

Parker attests that inmates on security detention always have a disciplinary conviction, and that when correctional staff look to determine if an inmate should be placed on security detention, the first criteria reviewed is the nature and seriousness of the disciplinary charge for which the inmate was convicted. The staff also considers the overall disciplinary history of the inmate, as well as the inmate's criminal history prior to his incarceration. Parker attests that charges of an assaultive or disruptive nature, such as possession of a weapon, inciting or creating a disturbance, riot, threatening to inflict harm, or striking an inmate or staff member are the type of charges that can warrant placement on security detention.

Parker attests that Plaintiff was on security detention when he arrived at MCI on September 19, 2005. Parker attests that, although he has no personal or first hand knowledge, he has reviewed Plaintiff's records to obtain a history concerning his placement in the SMU and security detention, and that from his review of Plaintiff's records, it appears that Plaintiff was initially placed in the SMU in 1997 and has been in the SMU on and off since that time. Plaintiff's records further

4



reflect that Plaintiff was placed on security detention while at PCI on June 17, 2005, and that he has not been at a lower security custody level than security detention since that time. Indeed, Plaintiff was placed in the maximum security unit, or "Super-Max" unit, on September 16, 2005. The Super Max unit is the most secure custody level in the SCDC, and houses inmates deemed to be too dangerous for the SMUs at the other correctional institutions. All Super Max inmates are housed at the Kirkland Correctional Institution (KCI). Parker attests that Plaintiff remained at the Super Max for three (3) days, and then was transferred to security detention at MCI. Parker attests that he has no knowledge as to the reason for Plaintiff's transfer to Super Max, or why he remained at Super Max for only three days. When Plaintiff arrived at MCI on September 19, 2005, he was on security detention.

Parker attests that when an inmate is on security detention, they are given a review every thirty (30) days to determine if they should be released to the general population. This thirty day review is conducted by the classification caseworker along with the SMU supervisor, who together comprise the ICC Committee for the SMU. Once the classification caseworker and SMU supervisor complete their review, they submit their recommendation to the Warden, who either approves or disapproves their recommendation. Inmates are notified prior to their thirty day review, and are then notified of the Warden's decision.

Parker attests that Plaintiff currently remains on security detention, and that based on his review, this is an appropriate custody level for the Plaintiff, as Plaintiff has an extensive disciplinary history, including multiple disciplinary convictions of an assaultive or disruptive nature. Parker attests that Plaintiff has been convicted of inciting or creating a disturbance, threatening to inflict harm, striking an inmate with or without a weapon, possession of a weapon, fighting without

5



a weapon, riot, and striking an employee, with multiple convictions on several of these offenses. As for Plaintiff's prior criminal history, he is currently serving a life sentence for kidnaping and murder.

With respect to the exhibits Plaintiff attached to his Complaint, Parker attests that Plaintiff initially forwarded a request to staff form to the Defendant Miller on June 4, 2006, to which Miller responded on June 5, 2006. Parker attests that Miller's response correctly states that Plaintiff would be up for his thirty (30) day review for determination of whether he could be released back to the general population, but that Miller incorrectly stated in his June 5, 2006 response that Plaintiff had been disciplinary free for one year. Parker attests that, in fact, Plaintiff had a disciplinary conviction for inciting or creating a disturbance on June 13, 2005, and another conviction for possession of contraband on July 18, 2005. Parker attests that while inmates are not required to be disciplinary free for one year in order to be released from security detention, disciplinary offenses are a consideration in determining whether they should remain in security detention.

With respect to Miller's response to Plaintiff's request to staff form dated October 29, 2006, wherein Miller made the statement that Plaintiff was on the list to be transferred pending bed space and that the Department was three hundred inmates over what it could hold, Parker attests that this was a correct statement by Miller that the Department was looking into the possibility of transferring Plaintiff to another institution, and that it was waiting for available bed space at another institution which met his security and classification requirements. Parker attests, however, that this transfer was not able to occur. Parker further attests that, even if Plaintiff had been transferred to another institution, he would have remained on security detention at his new institution. Parker attests that he does not know whether the Department had three hundred inmates more than its capacity at that time, but that this issue had nothing to do with Plaintiff not being transferred to



another correctional institution.

With respect to Plaintiff's right to have his security situation reviewed on a timely manner, Parker attests that Plaintiff has received appropriate thirty day reviews, including reviews on December 29, 2006, January 23, 2007 and February 22, 2007 (all after Plaintiff filed this action) while he was incarcerated at MCI. Parker attests that the recommendation from each of these reviews was that Plaintiff remain on security detention, and that he concurred with that recommendation. Parker attests that this decision was bolstered by the fact that Plaintiff was charged with possession of a weapon on February 10, 2007, after a homemade weapon eight (8) inches in length was found during a search of Plaintiff's cell.  A pipe was also found in a hole in the wall of Plaintiff's cell which was holding contraband.

Finally, Parker attests that Plaintiff was not housed on security detention while at MCI for any type of punishment or punitive reason, but because he was considered a threat to the safety and security of the institution, staff and other inmates.  See generally, Parker Affidavit.

The Defendant William Miller has also provided an affidavit, wherein he attests that he is a classification caseworker at MCI.  Miller attests that Plaintiff was housed at MCI from September 19, 2005 until March 28, 2007, that Plaintiff was on security detention when he arrived at MCI, and that he remained on security detention during the entire time he was housed at MCI. Miller attests that inmates who are housed in security detention are reviewed every thirty days to determine if they should be released to the general population, and that Plaintiff received these reviews while housed at MCI.  With regard to Plaintiff's request to staff on June 4, 2006, Miller attests that he erroneously stated in his response to that request that Plaintiff had been disciplinary free for one year, since Plaintiff had a disciplinary conviction on July 18, 2005.  Miller attests that

7



he correctly stated that Plaintiff would be reviewed to determine if it was appropriate to release him to the general population, but that Plaintiff was not released to the general population at that time. With respect to Plaintiff's request to staff on October 30, 2006, Miller attests that Plaintiff was on a list to potentially be transferred at that time, and that he so informed the Plaintiff, but that this transfer did not take place. Plaintiff was later transferred to the Allendale Correctional Institution (ACI) on March 28, 2007.

Miller attests that his comment that the SCDC had three hundred (300) more inmates than it could hold was not an appropriate statement for him to have made, but that this did not prevent Plaintiff's transfer to another correctional institution. Miller further attests that, following Plaintiff's transfer to ACI, he was returned to the general population, but that Plaintiff was subsequently placed back on security detention as a result of a June 14, 2007 disciplinary conviction for possession of a weapon. See generally, Miller Affidavit.

Finally, the Defendant Colie Rushton has submitted an affidavit wherein he attests that he was the Warden at MCI until May 21, 2007. Rushton attests that, as Warden, he was responsible for the overall operation of MCI, but that he has no specific recollection concerning the incidents raised by the Plaintiff in his Complaint. See generally, Rushton Affidavit.

Plaintiff did not submit any evidence with his memorandum in opposition to summary judgment, nor did the Defendants submit any additional evidence with their reply brief.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of



law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants initially assert that, since at all times relevant to the allegations of Plaintiff's Complaint they were employed and worked only at the McCormick Correctional Institution, any allegations contained in the Complaint which relate to Plaintiff's custody status either before he arrived at MCI or after he was transferred out of MCI necessarily fail, as these Defendants played no role in any custody decisions made at other institutions. The undersigned agrees.

Plaintiff has brought this case pursuant to 42 U.S.C.§ 1983, which is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). In order to maintain a claim against a defendant under this statute, a plaintiff must show that the named defendant actually participated in, or has a connection to, the alleged offenses at issue. See Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C.

9



1987). Plaintiff has presented no evidence, or has even made any allegations, to connect these three Defendants to any actions which may have been taken by other SCDC employees at other prisons with regard to Plaintiff's custody status. Therefore, any claims Plaintiff may be asserting, or have intended to assert, in this action relating to decisions made regarding his custody status at other institutions must be dismissed. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) [In order to maintain a claim under § 1983, a plaintiff must show, in part, that a named Defendant deprived him or her of a federal right.]; see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["liability...must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996); Horton v. Marovich, 925 F.Supp. 540 (N.D.Ill. 1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].

## II.

With respect to Plaintiff's claims concerning the custody status decisions made while he was at MCI, even though these three Defendants are subject to suit under § 1983 with regard to those claims, Plaintiff has failed to submit sufficient evidence to create a genuine issue of fact as to whether his constitutional rights were violated to survive summary judgment.

First, Plaintiff's claim that he had a "liberty interest" in remaining in the general population or that his placement in security detention otherwise constituted "cruel and unusual punishment" or otherwise violated his constitutional rights is without merit. Plaintiff had no constitutionally protected "liberty" interest in remaining in the general population, and he has failed to submit any evidence to show that the conditions under which he was held were so onerous as to



constitute cruel and unusual punishment. See generally, Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed], cert. denied, 513 U.S. 889 (1994); Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; Hewitt v. Helms, 459 U.S. 460, 468 (1983) ["The transfer of an inmate to less amenable and more restrictive quarters for non punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."][3]; see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); *cf.* Sandin v. Conner, 515 U.S. 472 (1995) [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmates confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest]; Jackson v. Bostick, 760 F.Supp. 524, 528 (D.Md. 1991); Mikeska v. Collins, 900 F.2d 833 (5th Cir. 1990); James v. Reno, 39 F.Supp.2d 37 (D.D.C. 1999) [Prisoner's transfer to medium security level facility did not result in cruel and unusual punishment without some showing of physical injury]; Moody v. Daggett 429 U.S. 78, 88 n. 9 (1976); Unger v. Crabtree, No. 95-36281, 1996 WL 588500 (9th Cir. Oct. 7, 1996) ["Because federal prisoners have no protected liberty interest in their custody classification levels,

---

[3] Unrelated portions of the holding in Hewitt v. Helms have been superannuated by later caselaw. This portion of the holding in Hewitt v. Helms has not been superannuated by later caselaw.

11



[Petitioner's] numerous challenges to his classification level are unavailing in this forum"]; Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) [holding administrative segregation placement is not a deprivation of a constitutionally cognizable liberty interest], cert. denied, 517 U.S. 1196 (1996); Sweet v. South Carolina Dep't of Corrections, 529 F.2d 854, 860-863 (4th Cir. 1975) [ordinary conditions of administrative segregation do not constitute cruel and unusual punishment].

To the extent Plaintiff is asserting a due process claim, placement of an inmate in maximum security for non-punitive reasons again does not violate the Constitution. Underwood v. Luoma, No. 03-2612, 2004 WL 1859098 at **2 (6th Cir. Aug. 17, 2004) ["A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered."]; Locklear v. Holland, No. 98-6407, 1999 WL 1000835 at **2 (6th Cir. Oct. 28, 1999) [Prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated]; Montanye v. Haymes, 427 U.S. 236, 242 (1976) [if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"]; Posey v. Dewalt, 86 F.Supp. 2d 565, 571 (E.D.Va. 1999) ["Put simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP...."], appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971 (2000); Jordan v. Federal Bureau of Prisons, No. 04-1104, 2006 WL 2135513 at *9 (10th Cir. July 25, 2006) ["Generally, 'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore, 'administrative segregation is the sort of confinement...inmates should reasonably anticipate receiving at some point in their

12



incarceration' and does not invoke an interest independently protected by the Due Process Clause."] (quoting Hewitt v. Helms, 459 U.S. at 468); Ferola v. Director of South Carolina Dep't of Corrections, No. 03-2918, 2006 WL 2475396 at *17 (D.S.C. Aug. 24, 2006).

Even assuming that Plaintiff may have had a due process claim if the Defendants failed to provide him with the thirty (30) day review of his security status as required by prison regulations, there is no evidence before the Court to show that the Defendants failed to conduct this review. Both Miller and Parker specifically attests that Plaintiff was provided his thirty (30) day security reviews while he was incarcerated at MCI, and Plaintiff does not appear to even contest that he received these security reviews. Rather, his complaint is that he was not approved for transfer to the general population. As reflected in the cited caselaw, however, Plaintiff had no constitutional right to be in the general population, and his claim that his federal due process rights were somehow violated because of the Defendants' failure to approve him for transfer to a lesser security status is therefore without merit. McCord v. Maggio, 910 F.2d 1248, 1250-1251 (5th Cir. 1990) ["Classification of prisoners is a matter left to the discretion of prison officials [and] [p]rison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order"]; Taylor v. Foltz, 803 F.Supp. 1261, 1266 (E.D.Mich. 1992) ["[P]risoners have no constitutionally protected entitlement to reside at a particular institution or to a particular classification"].

## **Conclusion**

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Based on the foregoing, it is recommended that the Defendants'

13



motion for summary judgment be **granted**, and that this case be **dismissed.**

        The parties are referred to the Notice Page attached hereto.

                                                  _____
                                                  Bristow Marchant
                                                  United States Magistrate Judge

Columbia, South Carolina

August 29, 2007



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).



15